# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| LANCE S., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 1:22CV1040 |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Lance S. brought this action to obtain review of a final decision of the Commissioner of Social Security denying his claim for disability insurance benefits and a period of disability. The Court has before it the certified administrative record and the parties' dispositive briefs.

### I. PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits and a period of disability alleging a disability onset date of December 31, 2012. (Tr. 15, 346-52.) The application was denied initially and upon reconsideration. (Tr. 200-03, 209-12.) After a hearing the Administrative Law Judge ("ALJ") determined on September 21, 2021, that Plaintiff was not disabled under the Act. (Tr. 93-126, 173-94.) On January 19, 2022, the Appeals Council granted a request for review and remanded the matter for further administrative proceedings. (Tr. 196-97.) Upon remand, a new hearing was then held before the same ALJ, who concluded on June 30, 2022, that Plaintiff was not disabled under the Act. (Tr. 15-92.) On October 6,

2022, the Appeals Counsel denied Plaintiff's request for review making the 2022 ALJ decision the final decision for purposes of review. (Tr. 1-6.)[1]

## II. STANDARD FOR REVIEW

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court is not whether Plaintiff is disabled but whether the finding that he is not disabled is supported by substantial evidence and based upon a correct application of the relevant law. *Id.*

## III. THE ALJ'S DECISION

The ALJ followed the well-established sequential analysis to ascertain whether the claimant is disabled. *See* 20 C.F.R. § 404.1520.[2] *See Albright v. Comm'r of Soc. Sec. Admin.*, 174

---

[1] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. (Docket Entry 2.)

[2] "The Commissioner uses a five-step process to evaluate disability claims." *Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012) (citing 20 C.F.R. § 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to his [or her] past relevant work; and (5) if not, could perform any other work in the national economy." *Id.* A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. *Id.* "Through the fourth step, the burden of production and

2

F.3d 473, 475 n.2 (4th Cir. 1999). The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 31, 2012, through his date last insured of June 30, 2019. (Tr. 18.) The ALJ next found the following severe impairments at step two: osteoarthritis, degenerative disc disease, and obesity. (Tr. 18.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1. (Tr. 23.)

The ALJ next set forth Plaintiff's Residual Functional Capacity ("RFC") and determined that he was able to perform light work and "could occasionally climb ladders, ropes, and scaffolds and frequently stoop, kneel, crouch, and crawl. The claimant could tolerate frequent, but not constant, exposure to workplace hazards, such as unprotected heights and dangerous machinery." (Tr. 26.) At the fourth step, the ALJ determined that Plaintiff could perform his past relevant work. (Tr. 31.) And, in an alternative step five finding, the ALJ concluded that there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 32-33.)

**IV. ISSUES AND ANALYSIS**

In pertinent part, Plaintiff contends that the ALJ's RFC analysis is unsupported by substantial evidence because "The ALJ found that [his] lateral epicondylitis of his right elbow was a non-severe impairment. But the ALJ did not discuss his testimony about his right elbow

---

proof is on the claimant. If the claimant reaches step five, the burden shifts to the Secretary to produce evidence that other jobs exist in the national economy that the claimant can perform considering his age, education, and work experience." *Hunter*, 993 F.2d at 35 (internal citations omitted).

3

issues or the medical records documenting the treatment he received for this impairment. The ALJ did not explain how she accounted for this impairment in the residual functional capacity (RFC) assessment." (Docket Entry 6 at 1.) Plaintiff later restates his argument more succinctly as (1) "The ALJ did not account for [his] lateral epicondylitis of the right elbow in the RFC or explain why not," (2) "The ALJ did not discuss the evidence showing that [his] right lateral epicondylitis would cause workplace limitations," and (3) "The ALJ's errors are harmful." (*Id.* at 5-6, 9.) In a reply memorandum, Plaintiff also contends that "The Commissioner did not show the ALJ's failure to account for the limitations stemming from [his] lateral epicondylitis of the right elbow in the RFC assessment is not reversible error." (Docket Entry 8 at 1.) This is because, according to Plaintiff, the ALJ "cherrypick[ed] facts that support a finding of nondisability while ignoring evidencing that points to a disability finding." (*Id.* at 2 citing *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017); *Arakas v. Comm'r*, 983 F.3d 83 (4th Cir. 2020).) Last, Plaintiff contends that the Commissioner's effort to rehabilitate the ALJ's errors relies on impermissible *post hoc* agency rationalizations. (*Id.* at 1-2.) As explained in greater detail below, the Court concludes that these objections have merit and that a remand for further administrative proceedings is warranted in these circumstances.

At step two of the sequential evaluation process, the claimant bears the burden of demonstrating a severe, medically determinable impairment that has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. § 404.1509; *Shrecengost v. Colvin*, No. 14CV506, 2015 WL 5126117, at *3 (W.D.N.Y. Sept. 1, 2015) ("[The p]laintiff bears the burden of establishing a severe impairment at step two by furnishing medical and

4

other evidence of the existence thereof as the Commissioner may require, and will not be considered disabled if such evidence is not provided."). The Act describes "a physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A physical or mental impairment must be established by objective medical evidence from an acceptable medical source. 20 C.F.R. § 404.1521. A statement of symptoms, diagnosis, or medical opinion is not sufficient to establish the existence of an impairment. *Id.* A "[l]icensed physician" or "[l]icensed psychologist" is an "acceptable medical source." 20 C.F.R. § 404.1502(a).

An impairment is "severe" unless it "has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984); *see also* 20 C.F.R. § 404.1522(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."); *Brookover v. Saul*, No. 2:20-CV-24-M, 2021 WL 4147075, at *4 (E.D.N.C. June 25, 2021). As such, the "severity standard is a slight one." *Stemple v. Astrue*, 475 F. Supp. 2d 527, 536 (D. Md. 2007).

"[A]n error at step two in failing to properly consider whether an impairment is severe may be harmless where the ALJ considers that impairment in subsequent steps." *Jones v. Astrue*, No. 5:07-CV-452-FL, 2009 WL 455414, at *2 (E.D.N.C. Feb. 23, 2009) (finding no reversible error where an ALJ does not consider whether an impairment is severe at step two

5

of the sequential evaluation provided the ALJ considered that impairment in subsequent steps) (citations omitted); *see also Shinseki v. Sanders*, 556 U.S. 396, 407 (2009); *Garner v. Astrue*, 436 Fed. App'x 224, 225, n\* (4th Cir. 2011). However, provided that the claimant has at least one severe impairment, the ALJ must consider the combined effect of all of the claimant's impairments, irrespective of whether they are severe, in determining the claimant's RFC. 20 C.F.R. § 404.1545(e); *Walker v. Bowen*, 889 F.2d 47, 49-50 (4th Cir. 1989).

As for the RFC, it measures the most a claimant can do in a work setting despite the physical and mental limitations of his impairments and any related symptoms (*e.g.*, pain). *See* 20 C.F.R. § 404.1545(a)(1); *see also Dunn v. Colvin*, 607 F. App'x 264, 272 (4th Cir. 2015) (claimant's RFC is "[a] medical assessment of what an individual can do in a work setting in spite of the functional limitations and environmental restrictions imposed by all of his or her medically determinable impairment(s).") (internal citation omitted); *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981).

"Social Security Ruling 96-8p explains that the RFC 'assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (internal quotations omitted). An ALJ need not discuss every piece of evidence in making an RFC determination. *See Reid v. Comm. of Soc. Sec.*,

769 F.3d 861, 865 (4th Cir. 2014). However, the ALJ "must build an accurate and logical bridge from the evidence to [the] conclusion." *Brown v. Commissioner*, 873 F.3d 251, 269 (4th Cir. 2017). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1.

Recently, the Fourth Circuit has held that "meaningful review is frustrated when an ALJ goes straight from listing the evidence to stating a conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (explaining that "a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion"). Instead, the ALJ "must both identify evidence that supports his conclusion and 'build an accurate and logical bridge from [that] evidence to his conclusion.'" *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (alteration in original) (quoting *Monroe*, 826 F.3d at 189). In particular, the ALJ "must build a logical bridge between the limitations he finds and the [vocational expert] evidence relied upon to carry the Commissioner's burden at step five in finding that there are a significant number of jobs available to a claimant." *Brent v. Astrue*, 879 F. Supp. 2d 941, 953 (N.D. Ill. 2012). An ALJ's failure to do so constitutes reversible error. *See Lewis v. Berryhill*, 858 F.3d 858, 868 (4th Cir. 2017). Where an ALJ's "analysis is incomplete and precludes meaningful review," remand is appropriate. *Monroe*, 826 F.3d at 191.

Additionally, "[a]n ALJ assesses the credibility of a claimant's subjective statements about his condition as part of the RFC assessment." *Ladda v. Berryhill*, 749 F. App'x 166, 170

7

(4th Cir. 2018). A two-part test governs the evaluation of a claimant's statements about symptoms. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996) (citing 20 C.F.R. §§ 416.929(b), 404.1529(b)). If such an impairment exists, the second part of the test then requires an ALJ to consider all available evidence, including the claimant's statements about pain, in order to determine whether the claimant is disabled. *Id.* at 595-596. While the ALJ must consider a claimant's statements and other subjective evidence at step two, he need not credit them if they conflict with the objective medical evidence or if the underlying impairment could not reasonably be expected to cause the symptoms alleged. *Id.* Where the ALJ has considered the relevant factors, *see* 20 C.F.R. § 404.1529(c)(3),[3] and heard the

---

[3] Relevant factors include:

>(i) [Plaintiff's] daily activities;
>
>(ii) The location, duration, frequency, and intensity of [Plaintiff's] pain or other symptoms;
>
>(iii) Precipitating and aggravating factors;
>
>(iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or [has] taken to alleviate [her] pain or other symptoms;
>
>(v) Treatment, other than medication, [Plaintiff] receive[s] or [has] received for relief of [her] pain or other symptoms;
>
>(vi) Any measures [Plaintiff] use[s] or [has] used to relieve [her]

8

claimant's testimony and observed their demeanor, the ALJ's determination regarding a claimant's subjective complaints is entitled to deference. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).

Having considered Plaintiff's contentions, the Court concludes that remand is necessary in this case because the ALJ failed to provide adequate logical analysis of Plaintiff's alleged right elbow problems, both at step two and later in formulating the RFC. The ALJ's determination is therefore insufficient to allow for meaningful judicial review.

More specifically, in this case, at step two, the ALJ found that Plaintiff's lateral epicondylitis of the right elbow was a non-severe impairment. (Tr. 19 ("Overall, the record does not establish that these impairments have caused more than minimal limitation in the claimant's ability to perform basic work activities for twelve (12) consecutive months and are therefore non-severe."). The ALJ supported this conclusion with a single sentence followed by two citations to the record: "[T]he claimant was diagnosed with lateral epicondylitis of the right elbow which he treated conservatively with a TE brace, injections, and occupational therapy (Exhibit 2F/75, 82)." (Tr. 10, 632, 639.) The ALJ does not meaningfully discuss this impairment elsewhere in the decision, either at step two or in the RFC determination.

---

> pain or other symptoms (e.g., lying flat on [her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

9

Case 1:22-cv-01040-WO-JLW   Document 9   Filed 12/06/23   Page 9 of 18

With respect to the alleged impairment, Plaintiff reported in his application that his elbow issues and tendinitis impacted his functionality. In his function report, he admitted having difficulty reaching his backside while bathing and wiping himself after using the toilet. (Tr. 457.) He was limited in his ability to reach and use his hands. (Tr. 461.) He used an arm brace (Tr. 462), testified that he had little strength in his right arm (Tr. 55), and that he struggled to pick up a gallon of milk (Tr. 55). If he tried to use his right arm, it would go numb, and his fingers would curl up. (Tr. 63.) He had right elbow surgery in 2017. (Tr. 64.)

In September 2013, he complained of right elbow pain since November 2011. (Tr. 637.) He had some tingling in his right hand. (Tr. 637) Plaintiff is right hand dominant. (Tr. 638.) He received occupational therapy for his right hand and elbow issues. (Tr. 607, 632-36.)

Physical exams have shown resisted dorsiflexion of the wrist and long finger; tenderness to palpation over the right lateral epicondyle and medial epicondyle; tenderness to palpation over the right elbow lateral epicondyle with myofascial pain throughout the wrist extensors; positive Tinel's over the cubital tunnel; diminished strength in his right hand due to pain with full grip; diminished sensation over the ulnar aspect; a positive Cozen's test; increased tenderness upon palpation over the bilateral medial and lateral epicondyles; hyperalgesia to pinprick over the skin of the right volar forearm, wrist, palm, and left brachial fossa; and decreased extension of his right arm by a few degrees. (Tr. 603, 605, 613, 623, 627-28, 639.) An MRI of his right elbow showed mild thickening of the retinaculum of the cubital tunnel and a non-specific increased signal within the ulnar nerve. (Tr. 627.)

10

Case 1:22-cv-01040-WO-JLW   Document 9   Filed 12/06/23   Page 10 of 18

On December 13, 2017, Plaintiff underwent a right lateral epicondylar release with posterior interosseous nerve release at the elbow. (Tr. 63-64, 654.) He continued treatment for right elbow pain in December 2017, January 2018, and March 2018. (Tr. 566.) At his August 29, 2019, consultative examination, he reported having problems with his right elbow with cubital tunnel. (Tr. 711.) The surgery helped with his strength, but he continued to have issues with pain. (Tr. 711.) A physical exam showed that his elbow flexion was 140 degrees bilaterally with extension to 0 degrees bilaterally. (Tr. 713.)

The ALJ did not discuss Plaintiff's testimony about his right elbow. (Tr. 28.) Instead, her summary largely focused on his issues with his lower back and lower extremities. (Tr. 26.) She also did not discuss any medical records documenting his treatment for his right elbow issues, other than the two record citations mentioned above. And those she referenced for the proposition that "lateral epicondylitis of the right elbow [were] treated conservatively with a TE brace, injections, and occupational therapy (Exhibit 2F/75, 82)." (Tr. 19, 632 (April 7, 2014), 639 (September 12, 1013).) These two medical records do demonstrate that Plaintiff's right elbow problems were treated conservatively *at that time* with a brace, an injection, and occupational therapy. (Tr. 10, 632, 639.) However, the problem here is that the ALJ's entire step two assessment materially understates the nature of Plaintiff's treatment, which was not conservative, but which involved surgical intervention.

It is well established that "surgery is not conservative treatment." *Daniel L. v. Kijakazi*, No. 22 C 6976, 2023 WL 5830807, at *6 (N.D. Ill. Sept. 8, 2023) (noting that even after conservative treatment "the end result was still surgery shortly thereafter, which suggests

strongly, that things were pretty bad for the plaintiff. Thus, the ALJ's rationale doesn't make sense. Undergoing painful and risky procedures in attempts to alleviate pain tends to support claims of severe pain."); *Barrino v. Berryhill*, No. 2:15-cv-1841 DB, 2017 WL 977670, at *9 (E.D. Cal. Mar. 14, 2017) ("[s]urgery is not conservative treatment") (collecting cases); *Sanchez v. Colvin*, No. CV 12-4061-SP, 2013 WL 1319667, at *4 (C.D. Cal. Mar. 29, 2013) ("surgery and conservative measures are at different ends of the treatment spectrum"). In fact, the page subsequent to the one cited by the ALJ actually states "veteran's condition does not seem to be responsive to conservative treatment, as no improvement noted since initial visit in December/2013[.]" (Tr. 633.)

Consequently, the record does not support the conclusion that Plaintiff's treatment was "conservative," and treated with no more than a brace, injections, and occupational therapy. In determining the Plaintiff's right elbow epicondylitis to be non-severe at step two the ALJ mischaracterized some of the medical evidence and ignored other medical findings. This error undermines the entirety of the ALJ's cursory step two analysis. In these circumstances, the Court is compelled to find that the ALJ erred. *See Hudson v. Colvin*, No. 7:12-CV-269-FL, 2013 WL 6839672, at *4, 8 (E.D.N.C. Dec. 23, 2013) (noting that "[i]t hardly bears repeating that an ALJ is required to consider all relevant evidence and to sufficiently explain the weight he gives to probative evidence[,]" and stating that the ALJ's "silence regarding [relevant medical assessments] raises the question whether [the ALJ] even considered this evidence"). While the ALJ was free to give little probative weight to these omitted medical records, "[s]he must say so and explain why." *Carter v. Colvin*, No. 5:12-CV-

12

736-FL, 2014 WL 351867, at *7 (E.D.N.C. Jan. 31, 2014) (internal quotation and alteration omitted).

Moreover, although the RFC includes a "light work" limitation, the ALJ did not meaningfully discuss the medical evidence related to Plaintiff's right elbow pain and limitations. The Court acknowledges that an ALJ's "failure to discuss every specific piece of evidence does not establish that she failed to consider it." *Mitchell v. Astrue*, No. 2:11-CV-00056-MR, 2013 WL 678068, at *7 (W.D.N.C. Feb. 25, 2013) (internal quotation and alteration omitted). However, the ALJ's decision must still ultimately "reflect[ ] that she conducted a thorough review of the evidence before her." *Id.*; *see also Hudson*, 2013 WL 6839672, at *8 (noting that "boilerplate representations [in the ALJ's decision] that he considered all the evidence" did not alleviate the court's concerns that the ALJ failed to consider various relevant medical assessments).[4]

The ALJ's failure to render an adequate step two assessment of Plaintiff's right elbow epicondylitis is not harmless, since the mischaracterization of Plaintiff's right elbow epicondylitis treatment as conservative, his right elbow epicondylitis surgery, and additional relevant medical evidence and testimony set forth above was not meaningfully addressed in the evaluation process. Indeed, even if Plaintiff's elbow pain and limitations would alone be considered "non-severe," any resulting limitations should still have been addressed in some

---

[4] The ALJ stated that she considered all of Plaintiff's impairments both severe and non-severe in rendering the RFC determination. (Tr. 19.) However, given the ALJ's failures at step two, and the deficiencies in the ALJ's RFC analysis of Plaintiff's right elbow problems, the Court is unwilling to rely upon this boilerplate statement in the circumstances of this case.

13

way in formulating the RFC. *See* SSR 96-8p, 1996 WL 374184 (July 2, 1996) ("[I]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim.").[5]

As previously noted in this District:

> Under 42 U.S.C. § 423(d)(2)(B), an ALJ must consider the combined effect of all physical and mental impairments when determining a claimant's disability status. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); *Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir.1989) (per curiam); *Hicks v. Gardner*, 393 F.2d 299, 301–02 (4th Cir.1968). An ALJ must consider "the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately" would be of a sufficient medical severity to constitute a "listed impairment." 42 U.S.C. § 423(d)(2)(C); *accord* 20 C.F.R. §§ 404.1523, 404.1526(a); *see also* 20 C.F.R. § 404.1525(e) (requiring ALJs to consider all impairments in combination when assessing the residual functional capacity); SSR 96-8p (same). This statutory and regulatory requirement compels the ALJ to consider the cumulative, compounding, or synergistic effect of the claimant's individual impairments instead of "fragmentiz[ing]" them or

---

[5] The Commissioner also contends that any error here is harmless because the jobs the ALJ concluded that Plaintiff can perform only require frequent or occasional reaching. (Docket Entry 7 at 9-10.) However, the Court cannot speculate what kind of limitation, if any, the ALJ will include in the RFC on remand. *See, e.g., Honeycutt v. Kijakazi*, No. 5:20-CV-438-RJ, 2022 WL 708523, at *6 (E.D.N.C. Mar. 9, 2022) ("Defendant argues that any error of the ALJ in explaining the upper extremity limitations is harmless because the light occupations that the VE testified that a person like Claimant could carry out do not require frequent reaching, fingering, or handling, thus the outcome of the decision would not have changed. However, the court cannot predict what the ALJ will find on remand with respect to Claimant's ability, which could be more limited than occasionally.") (citations, quotations omitted).

> evaluating them in isolation. *Walker*, 889 F.2d at 50 ("It is axiomatic that disability may result from a number of impairments which, taken separately, might not be disabling, but whose total effect, taken together, is to render claimant unable to engage in substantial gainful activity."); *accord*, *e.g.*, *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir.1983); *Oppenheim v. Finch*, 495 F.2d 396, 398 (4th Cir.1974); *Washington v. Comm'r*, 659 F.Supp.2d 738, 745 (D.S.C.2009); *Lemacks v. Astrue*, No. 8:07-2438-RBH-BHH, 2008 U.S. Dist. LEXIS 110165 at *10, 2008 WL 2510087, at *4 (D.S.C. May 29, 2008), *adopted by* 2008 U.S. Dist. LEXIS 47350, 2008 WL 2510040 (D.S.C. June 18, 2008) . . . .
>
> "As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effect of the impairments." *Walker*, 889 F.2d at 50. The ALJ must make a "particularized," or "specific and well-articulated," finding regarding the combined effect. *Hines*, 872 F.2d at 59 ("The ALJ must make a *particularized finding* on the effect of the combination of impairments." (emphasis added)); *Cook v. Heckler*, 783 F.2d 1168, 1174 (4th Cir.1986) (stating that the ALJ must make a "*specific and well-articulated finding* as to the effect of the combination of impairments*"* (emphasis added)). The ALJ may not merely consider each impairment in isolation.

*Money v. Astrue*, No. 1:08-CV-895, 2011 WL 3841972, at *8 (M.D.N.C. Aug. 26, 2011). Thus, even if after an adequate assessment that takes into account Plaintiff's non-conservative treatment, his right elbow epicondylitis is ultimately determined not to be a severe impairment at step two, that would not preclude consideration of any limitations in combination with his other impairments in formulating the RFC.

The Commissioner's arguments to the contrary are not persuasive. Specifically, the Commissioner reviews the record evidence she contends is related to Plaintiff's right elbow epicondylitis and concludes that it demonstrates that Plaintiff's impairment was non-severe. (Docket Entry 7 at 7-9.) However, the Commissioner is silent as to Plaintiff's elbow surgery

15

and little of what the Commissioner points to was addressed by the ALJ in her decision, and none of it (save the erroneous finding about "conservative" treatment) is referenced in relation to Plaintiff's right elbow epicondylitis, making this an impermissible *post hoc* agency justification. *See Anderson v. Colvin*, No. 1:10CV671, 2014 WL 1224726, at *1 (M.D.N.C. Mar. 25, 2014) (Osteen, C.J.) (concluding that the Court may not consider *post-hoc* rationalizations and may only consider reasons first set forth by the administrative agency) (citing *Securities & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194 (1947)). There is little to nothing in the ALJ's decision that meaningfully addresses Plaintiff's contentions related to his right elbow epicondylitis or describes Plaintiff's alleged attendant pain and limitations (whether as severe or non-severe), nor does the decision address the relevant medical treatment records, or provide adequate analysis for essentially disregarding this alleged impairment.[6] Nor does the Commissioner address the ALJ's erroneous assertion that her treatment for this impairment was conservative.

Ultimately, the ALJ's omissions render the Court unable to meaningfully review the ALJ's decision to determine if it is supported by substantial evidence. Resolution of Plaintiff's

---

[6] The ALJ found persuasive the opinions of State agency medical consultants Dakota Cox, M.D. and Phyllis Sandell, M.D. (Tr. 30.) It does not appear that either opinion specifically addressed Plaintiff's elbow surgery or whether Plaintiff's elbow condition was severe or non-severe. (Tr. 142-52, 158-69.) And, in any event, the ALJ appears to have excluded from her analysis of these opinions consideration of Plaintiff's elbow condition. (Tr. 30, noting that the opinions "are supported by diagnostic imaging noting degenerative changes in the claimant's low back and right shoulder and objective examination findings noting slightly antalgic gait"). Consequently, the Court finds unpersuasive any argument that the ALJ's consideration of these opinions satisfied her duty to consider Plaintiff's right elbow epicondylitis in a manner susceptible to judicial review.

16

allegations related to his right elbow epicondylitis "would require excessive intrusion into the ALJ's domain." *Anderson*, 2014 WL 1224726 at *3. As noted in *Anderson*, while the Court may make simple conclusions of law in finding that an ALJ's error is harmless, the Court may not "parse the administrative transcript and make . . . dispositive findings of fact that the ALJ did not make." *Id.* at *4. Here, accepting the Commissioner's arguments would require the Court to do just that. Therefore, even though it may be that Plaintiff's right elbow epicondylitis pain and limitations will ultimately be found not to be disabling, and even though it may be that the limitation to "light" work will be sufficient to account for this additional alleged impairment, remand is required so that these matters can be adequately addressed by the ALJ in the first instance.

All of this is sufficient to warrant remand for further consideration. None of this necessarily means that Plaintiff is disabled under the Act and the undersigned expresses no opinion on that question. Nevertheless, in light of all of the above, the undersigned concludes that the proper course here is to remand this matter for further administrative proceedings. Finally, the undersigned declines consideration of any additional issues raised by Plaintiff at this time. *Hancock v. Barnhart*, 206 F. Supp. 2d 757, 763-64 n.3 (W.D. Va. 2002) (on remand, the ALJ's prior decision has no preclusive effect, as it is vacated and the new hearing is conducted de novo).[7]

---

[7] Plaintiff also contends that the ALJ did not account for his mild mental limitations in the Paragraph B criteria of mental functioning or explain why mental limitations were omitted from the RFC. (Docket Entry 6 at 10.) Because remand is proper for other reasons discussed above, the Court will not definitively resolve Plaintiff's argument. Nevertheless, the Court will note that, at least at on its face, Plaintiff's argument seems to carry some force.

17

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be **REVERSED**, and that the matter be **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Recommendation. To the extent that Plaintiff seeks an immediate award of benefits, that request should be denied.

/s/  Joe L. Webster
United States Magistrate Judge

December 6, 2023
Durham, North Carolina

---

The Commissioner may consider this issue on remand.